# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
### NORTHERN DIVISION
#### (at London)

UNITED STATES OF AMERICA,   )
            )
    Plaintiff,      )  Criminal Action No. 6:13-7-DCR-CJS
            )  Civil Action No. 6:16-93-DCR-CJS
V.            )
            )
BRENDA EVERSOLE,     )  **REPORT AND RECOMMENDATION**
            )
    Defendant.     )

          \*\*\* \*\*\* \*\*\* \*\*\*

On May 31, 2016, Defendant Brenda Eversole, *pro se*, filed a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. (R. 372). The United States filed a Response to the Motion (R. 387), to which Defendant filed a Reply. (R. 392). Having all relevant documents before the Court, the matter is ripe for consideration and issuance of a Report and Recommendation. 28 U.S.C. § 636(b). For the reasons stated below, it will be **recommended** that Defendant's Motion to Vacate, Set Aside, or Correct Sentence (R. 372) be **denied**.[1]

## I. FACTUAL HISTORY

The relevant facts supporting Eversole's guilty plea and conviction can be found in her Presentence Report ("PSR"). (R. 357).[2] In the summer of 2012, law enforcement in Laurel County,

---

[1]Defendant recently filed a construed Motion for Leave to Amend her § 2255 Motion. (R. 398). As subsequently noted in this Report and Recommendation at footnote 12, Defendant's request to amend her § 2255 Motion should be denied, as briefing on the Motion is now complete and Defendant fails to point to a sufficient basis to warrant reopening the briefing.

Defendant also recently filed an Application to Proceed *In Forma Pauperis*. (R. 399). That Application is premature at this time because the § 2255 Motion is still pending before this Court and has been submitted to the undersigned for Report and Recommendation, with a final decision to be subsequently entered by the presiding District Judge. The Application will be ripe for consideration upon the District Judge's entry of his final decision and, therefore, it will be recommended that the Application be granted at that time.

[2]Eversole entered a guilty plea without having a written plea agreement.

Kentucky, began receiving complaints about methamphetamine trafficking occurring in the area. (*Id*. at 3). Specifically, Shane Begley, Deborah Vaughn, and Robert L. Sisco were identified as individuals who were transporting large quantities of high-grade methamphetamine into Kentucky from Georgia. (*Id*.). Eversole was eventually identified as a distributor who received most of her supply from Begley. (*Id*.). Her role in the conspiracy started around September 2012, when she began buying at least two, sometimes up to three, ounces of methamphetamine from Begley approximately every four days until her arrest in January 2013 (approximately thirty-five occasions).[3] (*Id*. at 7). She paid Begley for the drugs in advance and, after receiving the drugs, she would distribute a portion to co-conspirators and keep a portion for her own personal use. (*Id*.).

## II.    PROCEDURAL BACKGROUND

On February 28, 2013, a federal grand jury returned an indictment against Eversole[4] charging her with Conspiracy to Distribute 500 Grams or More of a Mixture or Substance Containing Methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846, as well as a forfeiture allegation. (R. 1). Eversole was ultimately arrested in March of 2013. At her arraignment proceeding on March 12, 2013, Eversole pleaded not guilty and a trial was set for May 28, 2013, before District Judge Danny C. Reeves. (R. 51).

### A.    Guilty Plea and Sentencing

On May 15, 2013, Eversole filed a Motion for Rearraignment. (R. 112). The Court granted the Motion and rearraignment was held on June 14, 2013. (R. 119). Eversole appeared with counsel at the rearraignment hearing to enter a guilty plea to the single count Indictment and the forfeiture

---

[3]This information was derived from Eversole's statement to law enforcement shortly after her arrest.

[4]Shane Jefferson Begley, Robert L. Sisco, Jr., Steve Floyd, Deborah Vaughn, Tyanna Branstetter, Chelsea Carson, Debbie Collier, and Erma McGraw were also indicted.

allegation. (R. 149). Eversole did not enter into a written plea agreement; however, the United States agreed to move for a three-level reduction in recognition of Eversole's acceptance of responsibility. (*Id.*). As there was no plea agreement, Eversole did not waive her right to appeal.

At the rearraignment hearing, Eversole was placed under oath. (R. 267 at 2-3). The District Court questioned Eversole extensively to ensure that she was competent to plead guilty, understood the rights she was giving up by pleading guilty, and was aware of the factors the Court considers when imposing a sentence. (*Id.* at 3-31). Counsel for Eversole confirmed that Eversole wished to proceed with her guilty plea without the benefit of a written plea agreement. (*Id*. at 4). The Court asked Eversole if anyone had made any promises to her to induce or persuade her to enter a plea of guilty, to which she responded, "No, sir." (*Id*. at 9). Eversole denied that anyone had made any threats or in any way forced her to enter a plea of guilty in the case. (*Id*. at 9-10).

The Court went over the potential penalties Eversole faced by pleading guilty in order to ensure that she understood the maximum penalties that could be imposed by law. (*Id*. at 10-11). The Court further explained how the sentencing guidelines operate and how they may be applied in Eversole's case. (*Id*. at 13-17). Specifically, Eversole was informed that the sentencing guidelines are based upon two primary factors, the first being the offense level for the crime charged and the second being defendant's criminal history, if any. (*Id*. at 14). The Court advised Eversole that those two factors would be taken together to determine a guideline range for the Court to consider, in conjunction with other factors, when imposing sentence on her. (*Id*. at 14-17).

The Court informed Eversole that, after the plea but before sentencing, a PSR would be prepared by the Probation Office and that she would be able to review it with counsel and file any objections she may have to its contents. (*Id*. at 14). Eversole was advised that her objections to the

report, if any, would be ruled upon prior to sentencing and that, until the objections were ruled upon, it would be impossible to know the sentencing guideline range applicable to her case. (*Id*. at 14-15). The Court informed Eversole of the rights she was giving up by pleading guilty, including the right to a speedy trial by jury, right of confrontation of witnesses, and the right to remain silent. (*Id*. at 18-20). When Eversole was asked if she understood that she was giving up these rights by pleading guilty, she responded in the affirmative. (*Id*. at 20).

Turning to the facts of this case, the Court asked Eversole to state in her own words the conduct that rendered her guilty of the charge against her. (*Id*. at 22). She responded, "I had - - was propositioned by Shane Begley, and I conspired with him, and I purchased dope off him, and then sold it to someone else." (*Id*.). Eversole admitted that her conduct occurred sometime between January 2010 and January 21, 2013, and that at least part of the conduct occurred in Laurel County, Kentucky. (*Id*. at 22-23). The Court advised Eversole that, if her case were to proceed to trial, the United States would be required to prove that two or more persons conspired or agreed to knowingly and intentionally distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine and that Eversole knowingly and voluntarily joined in that conspiracy. (*Id*. at 24-25). When asked if she believed that the Government could prove those elements against her, as far as her involvement in the crime was concerned, she again replied, "Yes, sir." (*Id*. at 25).

After the colloquy, the Court concluded that Eversole was fully competent and capable of entering an informed plea. (*Id*. at 27). The Court further found that the plea was knowing and voluntary, and supported by an independent basis in fact containing the essential elements of the offense charged. (*Id*.). As such, the Court accepted Eversole's plea and adjudged her guilty of the substantive count as well as the forfeiture allegation and set a date for sentencing. (*Id*.).

Following Eversole's rearraignment and prior to her sentencing hearing, the Probation Office prepared the PSR. (R. 357). The PSR contained an extensive review of the facts of this case and provided that, based on Eversole's statement to law enforcement, she was responsible for approximately 2.060 kilograms of methamphetamine during the conspiracy. (*Id*. at 8, ¶ 25). This calculation placed Eversole at a base offense level of 34.[5] (*Id*. at 12, ¶ 52). With the three level reduction for acceptance of responsibility, Eversole's final base offense level was 31. (*Id*. at 13, ¶ 55). The PSR also contained an analysis of Eversole's background, including her criminal history. (*Id*. at 19-22, 13-19). Eversole's criminal history yielded a criminal history score of 12 and a criminal history category of V. (*Id*. at 17, ¶ 73). Based on Eversole's total offense level of 31 and criminal history category of V, she had a Sentencing Guidelines range of 168 to 210 months of imprisonment.

On October 25, 2013, Eversole appeared with counsel for sentencing.[6] (R. 212). Although Eversole did not file any written objections to the contents of the PSR, counsel for Defendant made an oral objection to the quantity of methamphetamine that was attributed to Eversole. (R. 268 at 9-11). Counsel argued that Eversole was under the influence of methamphetamine at the time she made her statement to law enforcement that she was receiving approximately two ounces of the drug

---

[5]Under the version of U.S.S.G. § 2D1.1 in effect in 2012, a quantity of at least 1.5 kilograms but less than 5 kilograms of methamphetamine yields a base offense level of 34.

[6]Initially, Eversole's sentencing hearing was set for October 4, 2013. (*See* R. 149). However, at the October 4 hearing, counsel for Defendant requested a continuance to allow his client to consider filing a possible motion to withdraw her guilty plea. (R. 188). The Court granted the request and gave Eversole until October 11, 2013, to either file a motion for leave to withdraw her guilty plea or file a notice advising the Court that she did not intend to seek such relief. (*Id.*). On October 11, 2013, Eversole filed a motion requesting an additional seven days to determine whether to seek leave to withdraw her guilty plea. (R. 192). The Court denied Eversole's request in an Order entered October 15, 2013, and rescheduled the sentencing hearing for October 25, 2013. (R. 196).

per week.  (*Id*. at 10).  According to counsel, Eversole was actually only receiving about half of that amount and, if the Court subtracted the amount of methamphetamine that Eversole had been using herself, the amount would drop down below 1.5 kilograms which would reduce her base offense level, and therefore the length of her sentence.  (*Id*. at 10-11).

With respect to the PSR's conclusions on this point, the Court heard testimony from Probation Officer Robinson, who credited Eversole's initial statement to police, which was corroborated by two of her co-conspirators, to the effect that Eversole was receiving two ounces of methamphetamine from Begley approximately every four days.  (*Id*. at 13-15).  Officer Robinson further testified that he had calculated that two ounces, or fifty-six grams, multiplied by thirty-five, the approximate number of occasions Defendant received drugs from Begley during the conspiracy, totaled 1.960 kilograms.[7]  (*Id*.).  After hearing the testimony, the Court overruled the objection, finding by a preponderance of the evidence that the quantity of drugs had been properly attributed to Eversole in the PSR.  (*Id*. at 15-16).  The Court stated it believed the calculation of the amount of drugs distributed to Eversole to be correct and, even with a reduction for her personal use, such a reduction would not change the Sentencing Guidelines range.  (*Id*. at 15).  Eversole made no further objections to the PSR; the Court sentenced her to a term of incarceration of 190 months.  (*Id*. at 30).

**B.     Direct Appeal**

Eversole appealed her sentence, arguing it was procedurally unreasonable because the Court did not properly calculate the amount of methamphetamine that should be attributed to her under the

---

[7]This amount is slightly less than what Eversole was found responsible for in her PSR.  However, the amount in the PSR was an approximation and the difference is inconsequential because both amounts fall within the 1.5 kilograms to 5 kilograms Guidelines range.

Guidelines and so miscalculated her sentence. (R. 337). On March 11, 2015, the Sixth Circuit found that the drug quantity calculations of the District Court were accurate and the base offense level of 34 was appropriate. (*Id.; United States v. Begley,* 602 F. App'x 622, 626-27 (6th Cir. 2015)). Thus, the Sixth Circuit affirmed the District Court's sentence, holding that the amount of methamphetamine attributed to Eversole was not inappropriate and her sentence was procedurally reasonable. (*Id.*).

### C.    Post-Conviction Proceedings

On November 23, 2015, Eversole filed a *Pro Se* Motion for Modification of Sentence Pursuant to 18 U.S.C. § 3582(c)(2), seeking to have her sentence reduced based upon application of Amendment 782 to the Sentencing Guidelines. (R. 352). On November 30, 2015, District Judge Reeves denied Defendant's request under § 3582(c)(2) for a reduction in her sentence. (R. 353).

On May 31, 2016, Eversole filed the present Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (R. 372). Eversole asserts four grounds for relief in her § 2255 Motion. In order of presentation of her Claims, she alleges this Court: 1) violated her rights under the Fifth Amendment by improperly sentencing her under an incorrect criminal history category; 2) violated her rights under the Fifth Amendment by improperly sentencing her under an incorrect base offense level; 3) violated her rights under the Tenth and Fourteenth Amendments by increasing her sentence without requiring a jury to find the relevant drug quantity attributable to her; and 4) violated her rights under the Sixth Amendment by preventing her from calling witnesses in her favor and by allowing hearsay at sentencing. (*Id.*).

The United States was ordered to respond (R. 374), which it did on July 13, 2016. (R. 387). On August 8, 2016, the Sixth Circuit Court of Appeals affirmed the District Court's earlier denial

of Defendant's request for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2). (R. 391). Shortly thereafter, Eversole filed her Reply to the United States' Response to her § 2255 Motion. (R. 392). In her Reply, Eversole reiterates the grounds for relief stated in her 28 U.S.C. § 2255 Motion. However, for the first time, allegedly as a part of her initial claims, she asserts that: 1) she is entitled to relief pursuant to the holding in *Johnson v. United States*, 135 S. Ct. 2551 (2015); 2) she should have received a sentence reduction under Amendment 794 because she was a minor participant in the conspiracy; and 3) her counsel was ineffective for failing to dispute the amount of drugs attributed to her and/or file a motion to suppress the evidence used to calculate said amount. (*Id.*).

## III.    ANALYSIS

Under 28 U.S.C. § 2255(a), a federal prisoner may seek habeas relief on grounds that her conviction or sentence violated the Constitution or laws of the United States, that the court lacked jurisdiction to impose the sentence, that the sentence exceeded the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. *See* § 2255(a). A § 2255 motion does not have to be founded on constitutional error or even federal law. *Watt v. United States*, 162 F. App'x 486, 502-03 (6th Cir. 2006). However, to succeed on a § 2255 motion alleging constitutional error, a defendant "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). To obtain relief under § 2255 for a nonconstitutional error, a defendant must establish either a fundamental defect in the criminal proceedings which inherently resulted in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process. *See Riggs v. United States*, 209 F.3d 828,

831 (6th Cir. 2000), *abrogated on other grounds as recognized by Kumar v. United States*, 163 F. App'x 361 (6th Cir. 2006); *see also Hicks v. United States*, 122 F. App'x 253, 256 (6th Cir. 2005); *McNeal v. United States*, 17 F. App'x 258, 260-61 (6th Cir. 2001).

In sum, a defendant must allege in her § 2255 motion that: (1) her conviction was the result of an error of constitutional magnitude; (2) her sentence was imposed outside of statutory limits; or (3) there was an error of law or fact so fundamental as to render the proceedings invalid. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (citing *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). A defendant must prove her allegations by a preponderance of the evidence. *Pough*, 442 F.3d at 964.

### A. Direct Review Claim (Claim Two)

Eversole's claim that the sentencing court violated her rights under the Fifth Amendment by improperly sentencing her under an incorrect base offense level, presented in her § 2255 Motion as Claim Two, was raised in her direct appeal to the Sixth Circuit Court of Appeals. The Sixth Circuit affirmed the District Court's decision, holding that the amount of methamphetamine attributed to Defendant was not inappropriate and that her sentence was procedurally reasonable. (R. 337). Specifically, the Sixth Circuit held as follows:

> Eversole argues that her sentence is procedurally unreasonable because the court did not properly calculate the amount of methamphetamine that should be attributed to her under the Guidelines and so miscalculated her sentence. Her argument is also unpersuasive.
>
> A sentence would be procedurally unreasonable if the court "fail[ed] to calculate (or improperly calculat[ed] ) the Guidelines range" or "select[ed] a sentence based on clearly erroneous facts." *Gall*, 552 U.S. at 51, 128 S.Ct. 586. A district court's factual finding of drug quantity is reviewed for clear error. *United States v. Jeross*, 521 F.3d 562, 570 (6th Cir. 2008). Where a defendant is part of a "jointly undertaken criminal activity" involving drugs, "the defendant is accountable for all quantities of contraband with which [s]he was directly involved and ... all reasonably foreseeable

quantities of contraband that were within the scope of the criminal activity that [she] jointly undertook." USSG § 1B1.3 cmt. n. 2. When a defendant obtains drugs from a supplier for personal use as well as distribution in the context of a conspiracy, those drugs are "properly included ... in determining the quantity of drugs that the defendant knew were distributed by the conspiracy." *United States v. Page*, 232 F.3d 536, 542 (6th Cir. 2000).

Where the exact amount of drugs cannot be determined, "an estimate will suffice, but ... a preponderance of the evidence must support the estimate." *Jeross*, 521 F.3d at 570 (quoting *United States v. Walton*, 908 F.2d 1289, 1302 (6th Cir. 1990)). In making its estimate, the court must "conclude that the defendant is more likely than not actually responsible for a quantity greater than or equal to the quantity for which the defendant is being held responsible." *Id*. (quoting *Walton*, 908 F.2d at 1302). An estimate "may be based upon physical evidence (such as seized drugs) or testimonial evidence." *Id*. *United States v. Swanberg*, 370 F.3d 622, 625 (6th Cir. 2004) (relying on testimonial evidence). "[T]he evidence supporting the [sentencing court's] estimate must have a minimal level of reliability beyond mere allegation, and the court should err on the side of caution in making its estimate." *United States v. Russell*, 595 F.3d 633, 646 (6th Cir. 2010) (internal citations and quotation marks omitted).

There is no reason to conclude that the court erred in calculating the quantity of methamphetamine attributable to Eversole. At her sentencing hearing, Eversole did not initially object to the information in the presentence investigation report, and the court adopted its findings and guidelines calculations. Shortly thereafter, however, Eversole's attorney did object to the quantity of methamphetamine used to determine Eversole's guidelines, arguing that Eversole was under the influence of methamphetamine when she made her previous statement to law enforcement personnel that she was receiving approximately two ounces a week of the drug. Counsel argued that such an amount "doubles what she was actually getting," and that if the court subtracted the "large amount of methamphetamine that Ms. Eversole was using for herself, that would take her down under 1.5 kilograms of methamphetamine," and reduce her base offense level from 34 to 32. R. 268, Page ID 1044–45. The court then heard testimony from the probation officer, who credited Eversole's initial statement to police, which was corroborated by Carson and Vaughn, to the effect that Eversole received two ounces of methamphetamine from Begley approximately every four days. As calculated in the presentence report, two ounces, or 56 grams, was multiplied by 35, the approximate number of occasions on which Eversole received drugs from Begley during the course of the conspiracy, resulting in a total of 1.960 kilograms. This amount falls within the 1.5 to 5 kilogram range, which had a base level of 34 under the version of USSG § 2D1.1(c) in effect in 2012.

After considering this information, the court credited the probation officer's corroborated testimony, overruled the objection, and found the calculations to be accurate and the base offense level of 34 to be appropriate. The amount of methamphetamine attributed to Eversole was not inappropriate and her sentence is procedurally reasonable.

(*Id*.); *United States v. Begley,* 602 F. App'x 622, 626-27 (6th Cir. 2015).

By asserting this claim in her § 2255 Motion, Eversole is attempting to relitigate the same issue that was rejected by the Sixth Circuit. It is well established that issues raised and decided on direct appeal cannot be relitigated in a § 2255 motion. *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *United States v. Gallion*, No. 07-39, 2014 WL 2218361, at *15 (E.D. Ky. May 27, 2014) (arguments rejected on direct appeal cannot be relitigated in a § 2255 motion). Eversole does not argue an intervening change in the law relating to this claim, nor has she demonstrated any exception to the general prohibition against relitigation in a § 2255 motion. Because Eversole has already litigated and lost this argument on appeal, and has established no exceptional circumstances or intervening change in case law, the Court discusses it further only to complete the record in the event of objections.

Eversole argues that the trial court erred when it sentenced her using an incorrect base offense level that was derived from a miscalculation of the amount of methamphetamine attributable to her for sentencing purposes. She claims that the calculation is inaccurate because it was based off of an unreliable statement she made to law enforcement when she was "incapacitated" and included the amount of drugs she kept for her own personal use. According to Eversole, this caused the Court to sentence her using an incorrect Sentencing Guidelines range which constituted a violation of her right to due process under the Fifth Amendment. These arguments were made by Defendant's trial counsel during her sentencing.

MR. HOSKINS: Your Honor, I have explained to Mr. Dotson and the Court and Ms. Eversole that I feel like probably I should have filed an objection to the presentence report so that we could have had a hearing as to the quantity of methamphetamine that should be used to determine Ms. Eversole's guidelines.

And in those discussions, I would say that what Ms. Eversole has pointed out is that she made a statement to law enforcement that she was getting approximately two ounces a week of methamphetamine. And it's her position that that essentially doubles what she was actually getting. When she made that statement to law enforcement, she was under the influence of methamphetamine. She was a heavy user. She's one of the people that, because they had access to large quantities, used large quantities, and I think from her - - my interaction with her when she was first arrested, it was - - it was a while before I think she was really thinking straight.

If you take - - take that into consideration that she may not have been accurate when she made that statement to law enforcement, and you look at the statements of Deborah Vaughn and Chelsea Carson as to the quantities of methamphetamine that Mr. Begley and those people were bringing back from Georgia, they - - their guidelines are calculated on two ounces per trip, and the testimony is that Ms. Eversole usually would get half of that. I know there were some trips that were more than two ounces, but I think that's where we would be coming from on that. And if you factored in the large amount of methamphetamine that Ms. Eversole was using for herself, that that would take her down under 1.5 kilograms of methamphetamine, which would make her a level 32, rather than the 34 that was assessed.

(R. 268 at 9-11).

The Court rejected these arguments after hearing testimony from Probation Officer Robinson

that Eversole's statement to law enforcement as to the amount of drugs she was receiving, on which

he based his calculation, was corroborated by the statements of two of her co-conspirators, Chelsea

Carson and Deborah Vaughn. (*Id*. at 13-15). In rejecting the argument, the Court stated:

THE COURT: . . .based upon all of the information that has been provided, the Court determines by a preponderance of the evidence that the drug quantity has been properly attributed to Ms. Eversole.

In terms of the amounts that were being distributed to her, I believe those were correctly calculated, and even if the Court were to reduce the amount by a portion, based upon her own use, her personal use, that wouldn't - - would not drop below the guideline range, the base level offense of 34 based upon at least 1.5 kilograms, and not more than five. It would not be logical to assume that her own use would drop

the amount below 1.5 kilograms based upon all the evidence in the case, and, therefore, I do note the objection, but it will be overruled for the record.

(*Id*. at 15).

The quantity of drugs determined by the sentencing court need only be supported by a preponderance of the evidence. *United States v. Jennings*, 83 F.3d 145, 149 (6th Cir. 1996). The district court may rely on any competent evidence in the record; however, the district court's findings must have "some minimum indicium of reliability beyond mere allegation." *United States v. Ward*, 68 F.3d 146, 149 (6th Cir. 1995) (citation omitted). The minimum-indicia-of-reliability standard is a "'relatively low hurdle' that asks only that '*some* evidentiary basis beyond mere allegation in an indictment be presented to support consideration of such conduct as relevant to sentencing.'" *United States v. Johnson*, 732 F.3d 577, 583 (6th Cir. 2013) (citing *United States v. Moncivais*, 492 F.3d 652, 659 (6th Cir.2007)).

In finding that the drug quantity was properly attributed to Eversole in this case, the District Court considered her statement to law enforcement concerning the amount of drugs she was receiving and the fact that her statement was corroborated by the statements of two of her co-conspirators. While Eversole claims that her statement is unreliable because she was "incapacitated" at the time it was made, she does not address the fact that her statement was substantiated by evidence in the record. Eversole's own statement, together with the corroborating statements of her co-conspirators, constitutes an indicium of reliability beyond mere allegation. *See United States v. Hunt*, 487 F.3d 347 (6th Cir. 2007) (holding corroborating evidence can provide a sufficient indicia of reliability); *see also United States v. Swanberg*, 370 F.3d 622, 625 (6th Cir. 2004) ("[t]estimonial evidence from a coconspirator may be sufficient to determine the amount of drugs for which another coconspirator should be held accountable") (citations omitted). Further, there is no evidence in the

record contradicting the statements made by Eversole and her co-conspirators as to the amount of drugs that Eversole was receiving during the conspiracy. The Sixth Circuit Court of Appeals also considered Eversole's argument regarding the attributed drug amount and, finding it unpersuasive, affirmed Eversole's sentence. As such, this claim lacks merit and does not warrant § 2255 relief.

Eversole further argues that the calculation of drugs attributable to her was inaccurate because it included the amount of drugs she kept for her own personal use. However, in considering Eversole's arguments, the Court made the finding that a reduction in the amount of drugs attributable to Eversole based upon her personal use would not lower the amount below the 1.5 kilogram range and, therefore, would not have any effect on her sentence. Thus, this argument also has no merit and Eversole has failed to establish she is entitled to relief on this ground.

Finally, though not entirely clear, Eversole's argument in support of this second claim that the District Court utilized an erroneously calculated base offense level at sentencing in violation of her Fifth Amendment rights could be referring to her previously-filed § 3582 Motion seeking a reduction of her sentence through application of Amendment 782. (*See* R. 372, at 5). As District Judge Reeves determined in ruling on that § 3582 Motion, Amendment 782 would reduce Eversole's base offense level from 34 to 32, which base offense level was subject to the 3-point reduction for timely acceptance of responsibility, changing her total offense level to 29. (*See* R. 353, at 4). The base offense level calculation of 34 at the time of sentencing was not erroneous and did not constitute a violation of Defendant's rights under the Fifth Amendment. Rather, it was only because of the subsequent enactment of Amendment 782 that a change in her base offense level resulted. This change in base offense level lowered Defendant's non-binding Sentencing Guidelines range to 140 to 175 months of imprisonment. (*Id.*). This did not, however, change the statutory minimum

mandatory term of incarceration of ten years and maximum term of incarceration of life pursuant to 21 U.S.C. § 841(b)(1)(A). Although the 190-month sentence initially imposed is now above the adjusted range under the Sentencing Guidelines after applying Amendment 782, the 190-month sentence is below the statutory maximum term of incarceration. District Judge Reeves, after reviewing the facts of Eversole's case and the relevant 18 U.S.C. § 3553(a) sentencing factors, denied Eversole's request for a reduction in her 190-month sentence, despite the change in her base offense level and resulting Guidelines range. (*See* R. 353, at 6). Eversole appealed this denial of a sentence reduction, and the Sixth Circuit affirmed this decision. (*See* R. 391). Thus, there was no "error" in the District Court's original calculation of Defendant's base offense level[8] and, consequently, there was no violation of her Fifth Amendment rights in this regard.

## B.     Procedurally Defaulted Claims

The remaining three claims Eversole raises in her § 2255 Motion are procedurally defaulted because she did not raise them on direct appeal. Specifically, Eversole's claims that this District Court: 1) violated her rights under the Fifth Amendment by improperly sentencing her under an incorrect criminal history category; 3) violated her rights under the Tenth and Fourteenth Amendments by increasing her sentence without requiring a jury to find the relevant drug quantity

---

[8]In fact, in her Reply, Eversole cites to *Molina-Martinez v. United States,* 136 S. Ct. 1338 (2016), as supporting resentencing where a Guidelines calculation error has occurred. *Molina-Martinez* stands for the proposition that on direct appeal "[w]hen a defendant is sentenced under an incorrect Guidelines range - whether or not the defendant's ultimate sentence falls within the correct range - the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Molina-Martinez,* 136 S. Ct. at 1345. *Molina-Martinez*, however, is not applicable here, as Defendant's Guidelines calculations at sentencing were correct, as upheld by the Sixth Circuit on direct appeal. Thereafter, her Guidelines range did change based upon Amendment 782, which she presented and argued by way of her § 3582 Motion. Her request for a sentence reduction based on that change was reviewed by District Judge Reeves on the merits and denied, which denial was upheld by the Sixth Circuit.

attributable to her; and 4) violated her rights under the Sixth Amendment by preventing her from calling witnesses in her favor and by allowing hearsay at sentencing, are procedurally defaulted.

Except for a claim of ineffective assistance of counsel, a federal prisoner's failure to raise a claim on direct appeal results in a procedural default of that claim. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001); *Phillip v. United States*, 229 F.3d 550, 552 (6th Cir. 2000). For a federal prisoner to obtain review of a defaulted claim in a § 2255 motion, he must show cause to excuse his failure to raise the claim previously and actual prejudice resulting from the alleged violation. *Bousley*, 523 U.S. at 622; *Peveler*, 269 F.3d at 698–700; *Phillip*, 229 F.3d at 552. If the prisoner fails to establish cause, it is unnecessary to determine if he was prejudiced by the alleged violation. *Bousley*, 523 U.S. at 623.

Nowhere in her Motion does Eversole offer any cause as to why she did not raise these three arguments on direct appeal. Neither does she offer any cause in her Reply. Because Eversole cannot show cause, an analysis as to prejudice is unnecessary. However, a prisoner who fails to establish cause and prejudice may still be able to obtain review of a procedurally defaulted claim if her case fits within a narrow class of cases permitting review in order to prevent a fundamental miscarriage of justice, as when she submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent. *Bousley*, 523 U.S. at 622–23 (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)). "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 624. Moreover, the actual innocence exception deals with a "severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1933 (2013).

Actual innocence has not been shown by Eversole in this case. She does not argue that she is actually innocent of the crime of conspiracy to distribute methamphetamine. There is also no evidence in the record to suggest that it is more likely than not that no reasonable juror would have convicted her of the charge. Because Eversole has not offered cause for why she did not raise her claims of procedural unreasonableness at the appellate level and did not argue actual innocence, her claims fail. Despite the fact that these claims are barred as procedurally defaulted, the Court discusses them further to complete the record in the event of objections.

### 1. Incorrect Criminal History Category Claim (Claim One)

Defendant claims that her rights under the Fifth Amendment were violated when the sentencing court sentenced her under the wrong criminal history category. However, this claim fails because Defendant did not support it with any facts or law, and the undisputed facts and settled law show that she is not entitled to relief.

When a party fails to adequately argue a claim, the Court may consider the claim abandoned. *United States v. Hough*, 276 F.3d. 884, 891 (6th Cir. 1996) (holding that because parties "have failed to adequately brief this court, we consider the [parties'] claims to have been abandoned"); *see Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000) (finding that a conclusory statement is insufficient to raise the issue of ineffective assistance of counsel); *see also Tucker v. United States*, 423 F.2d 655, 656 (6th Cir.1970) (pure conclusory statements in a § 2255 motion, absent any specific allegations as to how, when, and where the claimed constitutional infringements occurred, would not be credited). While Eversole claims that she was sentenced under the wrong criminal history category, she makes no factual allegations to support such a claim. She does not dispute the criminal history set forth in her PSR, nor does she suggest which criminal history category she deems

17

proper. Absent any factual support, this claim is insufficient to permit the Court to even infer a real possibility of a constitutional error.

Further, this claim fails on the merits because there are no facts in the record to support Eversole's argument that she was sentenced under an incorrect criminal history category. Eversole's extensive criminal history is outlined in Part B of the PSR. She has twelve adult convictions[9] and was assessed twelve criminal history points,[10] which equates to a criminal history category of V. (R. 356 at 13-17, ¶ 56-70). Eversole did not object to the criminal history as provided in her PSR, nor did she object to the criminal history computation. (R. 268). During the sentencing hearing, the Attorney for the United States addressed Eversole's criminal history, arguing that it was extensive and citing to many of the charges listed in the PSR. (*Id*. at 18-21). Eversole did not dispute the accuracy of her criminal history as relayed by the Attorney for the United States. The Court also referenced certain convictions listed in Eversole's criminal history when making its determination as to sentencing and, again, no objections were made. A review of the PSR reveals that Eversole's criminal history score was calculated in accordance with the Sentencing Guidelines.[11] Because this claim has no merit, it does not warrant habeas relief under § 2255.

### 2.      Right to Jury Claim (Claim Three)

---

[9]This does not include Eversole's other criminal conduct and arrests that were not included in the calculation of her criminal history category.

[10]Eversole received an additional two points pursuant to U.S.S.G. § 4A1.1(d) because she committed the instant offense while under a criminal justice sentence for Failure of Owner to Maintain Required Insurance. (R. 356 at 17, ¶ 72).

[11]The calculations comply with the relevant Sentencing Guidelines, U.S.S.G. § 4A1.2 and § 4A1.1.

Eversole claims that the sentencing Court violated her rights under the Tenth and Fourteenth Amendments by increasing her sentence without requiring a jury to find the relevant drug quantity attributable to her. This claim fails because the settled law shows that she is not entitled to relief.

Factual findings that impact only the advisory Guidelines range do not have to be submitted to a jury and proven beyond a reasonable doubt; such findings can be made by a judge and by a preponderance of the evidence. *See United States v. Jackson,* 594 F. App'x 297, 300 (6th Cir. 2014) (district court did not err in imposing sentencing enhancements to increase a Guidelines range based on facts not submitted to jury); *United States v. Toney*, 591 F. App'x 327, 330-31 (6th Cir. 2014) (judicial fact-finding that only increases advisory Guidelines range is permissible) (citing *Alleyne v. United States*, 133 S. Ct. 2151 (2013)); *United States v. Louchart*, 579 F. App'x 492, 496 (6th Cir. 2014) ("the Supreme Court's decision in *Alleyne* did not change the preponderance of the evidence standard for fact finding under the sentencing Guidelines") (quoting *United States v. Cooper*, 739 F.3d 873, 884 (6th Cir. 2014); *United States v. Alexander*, 467 F. App'x 355, 367–68 (6th Cir. 2012) (facts used to calculate recommended sentence under Guidelines do not need to be found by a jury) (citing *United States v. Booker*, 543 U.S. 220 (2005)).

Eversole entered a guilty plea in this case. During her plea, she stated that she understood that, by pleading guilty, she was giving up her right to have a jury hear her case. At sentencing, counsel for Defendant made an oral objection to the quantity of methamphetamine that was attributed to Eversole in the PSR. Counsel argued that Eversole's statement to law enforcement regarding the amount of drugs she was receiving was inaccurate because she was under the influence of methamphetamine at the time she made it. Counsel also requested the Court to reduce the amount of drugs attributed to Eversole to account for the drugs she was using herself. The Court heard

testimony from Probation Officer Robinson that Eversole's statement to law enforcement was corroborated by the statements of two of her co-conspirators. Officer Robinson further testified as to how he calculated the amount of drugs attributable to Eversole. After hearing the testimony, the Court overruled the objection, finding by a preponderance of the evidence that the quantity of drugs had been properly attributed to Defendant in the PSR. The Court of Appeals affirmed Eversole's sentence. Eversole does not cite to law supporting her claim that she was entitled to a jury finding regarding the facts used to calculate her sentence and this Court is not aware of any. As a result, Defendant is not entitled to habeas relief on this ground.

### 3. Hearsay and Witness Claims (Claim Four)

Eversole argues that the sentencing court violated her rights under the Sixth Amendment by preventing her from calling witnesses in her favor and by allowing hearsay to support her increased offense level at sentencing. This argument fails because it is not supported by the facts in the record nor is it supported by the law.

First, Eversole's claim that she is entitled to relief because she was prevented from calling witnesses should be deemed abandoned because she did not support her claim with any facts or law. *Hough*, 276 F3d. at 891; *see Elzy*, 205 F.3d at 886; *see also Tucker*, 423 F.2d at 656. While Eversole's claim insinuates that she wished to call witnesses on her behalf at her sentencing hearing and was denied that right, she does not name a single witness she wanted to call or how witness testimony would have changed her sentence. She also fails to note where in the record the Court prevented her from calling witnesses. Without this information, her claim is insufficient to permit the Court to even infer a real possibility of a constitutional error.

Second, Eversole's claim of denial of the right to call witnesses at sentencing fails on the merits because the facts in the record do not support her claim. A review of the transcript of Eversole's sentencing reveals that she never requested to call witnesses to testify in her favor. As such, the Court could not have prevented her from doing so. As there are no facts in the record to support this claim, relief under § 2255 is not warranted on this basis.

Finally, Eversole's claim that her rights were violated when the Court considered hearsay to determine her sentence is also meritless. During Eversole's sentencing hearing, the Court relied on the PSR and testimony from Probation Officer Robinson to find that the amount of drugs attributable to Eversole was correct by a preponderance of the evidence. Probation Officer Robinson testified that Eversole's statement to law enforcement regarding the amount of drugs she was receiving was corroborated by the statements of two of her co-conspirators. Despite whether these out-of-court statements even qualify as hearsay, sentencing hearings are not subject to the Federal Rules of Evidence, and hearsay statements are admissible as long as they bear "some minimal indicia of reliability." *See United States v. Wilson*, 485 F. App'x 109, 111-12 (6th Cir. 2012) (citing *United States v. Moncivais*, 492 F.3d 652, 658 (6th Cir. 2007), and quoting *United States v. Silverman*, 976 F.2d 1502, 1512 (6th Cir. 1992)). "To successfully challenge hearsay evidence relied upon by the sentencing judge, 'the defendant must establish that the challenged evidence is materially false or unreliable, and that such false or unreliable information actually served as the basis for the sentence.'" *Id*. at 112 (quoting *Silverman*, 976 F.2d at 1512). As previously discussed in this Report and Recommendation, the evidence relied upon by District Judge Reeves in his determination of the amount of drugs attributable to Defendant was not unreliable. Thus, the Court's proper reliance on

the hearsay evidence at sentencing was not a violation of Eversole's constitutional rights, and she is not entitled to habeas relief on this claim.

## C.    New Contentions Raised in Reply[12]

Defendant on August 15, 2016, filed her Reply in follow up to the Government's Response and in further support of her § 2255 Motion. (*See* R. 392). That Reply, however, also raises new arguments not asserted within her original Motion that Eversole tries to present as being within her original four claims. Specifically, she argues that she is entitled to relief pursuant to the holding in *Johnson v. United States,* 135 S. Ct. 2551 (2015); that she should have received a sentence reduction under Amendment 794 because she was a minor participant in the conspiracy; and that her counsel was ineffective for failing to dispute the amount of drugs attributed to her and/or file a motion to suppress the evidence used to calculate the amount. Generally, the raising of these arguments for the first time in a reply filing is improper and the newly-raised claims could be rejected on this basis. *See Sanborn v. Parker,* 629 F.3d 554, 579 (6th Cir. 2010) (citing *Am. Trim, L.L.C. v. Oracle Corp.,* 383 F.3d 462, 477 (6th Cir. 2004)); *see also United States v. McCorkle,* No. 1:07-cr-288, 2010 WL 2131907, at *7 (W.D. Mich. Mar. 30, 2010)(collecting cases); *Burns v. Lafler,* 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004). It will therefore be recommended that these three contentions be denied as procedurally improper. In addition, and as discussed below, it will also be recommended that these

---

[12]Defendant also recently filed a form filing entitled Application for Certificate of Appealability. (R. 398). Defendant's letter attached to this form (*see* R. 398-1) explains that, rather than seek a certificate of appealability, what she actually seeks to do is to "amend and/or revise [her] previous existing Motion 2255[.]" (*Id.*). Defendant has already raised new arguments in her Reply not presented in her initial § 2255 Motion, which arguments are discussed immediately below. Therefore, in this regard her construed Motion to Amend her § 2255 Motion is moot. To the extent Defendant seeks to assert yet additional grounds as to her claims, it will be recommended that this request be denied, as briefing is complete and Defendant has not offered any appropriate grounds for why briefing should be reopened.

contentions be rejected on their merits, which discussion has been included to complete the record in the event of objections.

### 1.    Claim pursuant to *Johnson v. United States*

Eversole asserts in her Reply that she is entitled to relief pursuant to the holding in *Johnson v. United States*, 135 S. Ct. 2551 (2015). However, for the reasons stated below, the holding in *Johnson* does not apply to Eversole's case and, therefore, this claim fails on the merits.

In *Johnson,* the Supreme Court held the residual clause of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1), to be unconstitutionally vague. *Johnson,* 135 S. Ct. at 2560-62. Under the ACCA, a defendant convicted of being a felon in possession of a firearm faces a mandatory minimum of 15 years of imprisonment if he has three previous convictions for a violent felony, a serious drug offense or both. 18 U.S.C. § 924(e)(1). The ACCA defines the term "violent felony" to include any previous felony conviction that "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). This portion of the definition of "violent felony" is the "residual clause," which the Supreme Court held in *Johnson* is unconstitutionally vague. *Johnson*, 135 S. Ct. at 2563.

The Sixth Circuit has extended the rationale in *Johnson* to invalidate certain sentences imposed utilizing the career offender clause in § 4B1.1 of the Sentencing Guidelines. The Sixth Circuit in *United States v. Pawlak* extended the holding of *Johnson* to an identical residual clause in Sentencing Guideline § 4B1.2(a) defining "crime of violence" under the career offender enhancement, rendering the residual clause in § 4B1.2(a) unconstitutionally vague. *See United States v. Pawlak,* 822 F.3d 902, 910 (6th Cir. 2016). Retroactive application of the *Johnson* holding to the Sentencing Guidelines has recently been recognized by the Sixth Circuit, *see In re: Antonio*

*D. Patrick, Movant,* __ F.3d __, No. 16-5353, 2016 WL 4254929, at *3 (6th Cir. Aug. 12, 2016) ("The Supreme Court's rationale in *Welch* for finding *Johnson* retroactive applies equally to the Guidelines."), and the question will be taken up by the Supreme Court this term in *Beckles v. United States,* __ U.S. __, 136 S. Ct. 2510 (2016) (Mem.).

Here, however, Eversole was not sentenced under the ACCA or as a career offender. Neither the Supreme Court's holding in *Johnson* nor the Sixth Circuit's holding in *Pawlak* has any relation to her sentence for distribution of methamphetamine. It is also not logical that the holding in *Johnson* would be extended to invalidate Eversole's sentence. In contrast to the identically-worded "residual clause" contained in the ACCA and the Sentencing Guidelines' career offender provision, the laws and sentencing guidelines under which Eversole was sentenced are not "vague" in any sense. Section 841(a)(1) makes it "unlawful for any person knowingly or intentionally to manufacture, distribute, or possess with the intent to manufacture, distribute or dispense, a controlled substance . . ." 21 U.S.C. § 841(a)(1). Section 846 provides, "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 846. These statutes are not vague in any way; all prohibited conduct is clearly identified, and there is no "residual clause" contained within the statutes. *See United States v. Ramirez,* 479 F.3d 1229, 1258 (10th Cir. 2007) (holding that the statutes under which defendant was convicted of conspiring to distribute methamphetamine were not void for vagueness) *abrogated on other grounds as recognized in Garrison v. Ortiz,* 296 F. App'x 724, 726 (10th Cir. 2008). Eversole has not offered, nor has the Court found, any precedent of a federal court holding that *Johnson* applied to invalidate a sentence under 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846. Thus,

as Eversole's sentence imposed by the District Court was not impacted by either *Johnson* or *Pawlak,* Defendant is not entitled to relief under this claim.

### 2.    Amendment 794 Claim

In her Reply in support of her § 2255 Motion, Eversole also argues that Amendment 794 to the Sentencing Guidelines should be applied here, thereby reducing her base offense level by 2 levels for her role as a minor participant in the conspiracy.  (*See* R. 392, at 3).[13]  Eversole argues she is entitled to this reduction in her offense level as a minor participant because her involvement in the conspiracy was for a period of only five months.[14]

Section 3B1.2 of the Sentencing Guidelines allows a sentencing court to reduce a defendant's offense level "[b]ased on the defendant's role in the offense," providing for a reduction of 4 levels if a defendant was a minimal participant, a reduction of 2 levels if a minor participant, or a reduction of 3 levels if falling between minimal and minor.  U.S.S.G. § 3B1.2 (2015).  Application Note 3(A), under the heading of "Applicability of Adjustment," explains that this section "provides a range of

---

[13]In her Reply, Eversole presents this application of Amendment 794 argument as being a part of the second claim raised in her § 2255 Motion relating to attributing to her an incorrect amount of drugs. However, this contention as to Amendment 794 was never presented in Claim Two of her § 2255 Motion or otherwise mentioned in that Motion.

[14]Eversole argues the Court applied an incorrect Guidelines range to her and, had she been "sentenced in the correct guideline range, the Movant would not have been subject to the erroneous mandatory minimum that the Government alleged."  (R. 392 at 3).  It is unclear what Eversole means by her statement that she would not have been subject to the erroneous mandatory minimum.

If Eversole is arguing that the amount of drugs attributed to her was in error and that this error impacted the base offense level for guideline purposes as well as the statutory mandatory minimum sentence, this argument challenging the amount of drugs attributed to her has already been addressed herein this Report and Recommendation.

If Eversole is arguing her base offense level changed due to Amendment 782 to the Sentencing Guidelines, which is what she presented in her *Pro Se* Motion for Modification of Sentence Pursuant to 18 U.S.C. § 3582(c)(2) (*see* R. 352), she is correct and her base offense level did change.  But as previously discussed, District Judge Reeves, after reviewing the facts of Eversole's case and the relevant 18 U.S.C. § 3553(a) sentencing factors, denied Eversole's request for a reduction in her sentence (*see* R. 353 at 6) and the Sixth Circuit affirmed this decision (*see* R. 391).

adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity." *Id.* App. Note 3(A). A reduction for a minimal participant "is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group." *Id.* App. Note 4. A reduction for a minor participant, "applies to a defendant . . . who is less culpable than most other participants, but whose role could not be described as minimal." *Id*. App. Note 5.

Amendment 794, effective November 1, 2015, amended the Commentary section of § 3B1.2, which includes the Application Notes. Among other things, the Amendment "provides additional guidance to sentencing courts in determining whether a mitigating role adjustment applies. Specifically, it addresses a circuit conflict and other case law that may be discouraging courts from applying the adjustment in otherwise appropriate circumstances." U.S.S.G. Supp. to App'x C, Amend. 794 (2015). According to the Commission, "there are differences among circuits about what determining the 'average participant' requires." *Id*. Specifically, the Seventh and Ninth Circuits viewed the "average participant" as including only the persons who participated in the criminal activity committed in the defendant's particular case and, therefore, determined defendant's relative culpability only by reference to his co-participants. *Id*. Other circuits, however, viewed the "average participant" as including persons outside of defendant's particular case who were participating in similar crimes. *Id*. The Amendment adopts the approach of the Seventh and Ninth Circuits by revising the Commentary to § 3B1.2 to specify that a defendant is to be compared with the other participants "in the criminal activity" when determining if a defendant had a mitigating role. *Id*. In addition, the Amendment included a non-exhaustive list of factors a court "should consider" in

determining whether a mitigating role adjustment applies and, if so, the extent of the adjustment. *Id*.[15]

Amendment 794 was not in place when Eversole was sentenced in October 2013, when she filed her direct appeal in November 2013 (*see* R. 239), or when the Sixth Circuit issued its ruling affirming her sentence in March 2015 (*see* R. 337). The fact that Amendment 794 did not become effective until after Eversole was sentenced and that sentence was affirmed on direct appeal is significant because, had the Amendment become effective prior to these events, she would have had the opportunity to raise the applicability of Amendment 794 at sentencing and on direct appeal.

Sentencing Guidelines § 1B1.11(a) requires courts to use the Guidelines Manual in effect on the date that a particular defendant is sentenced in its entirety. That is, courts are not permitted to apply "one guideline section from one edition of the Guidelines Manual and another guideline section from a different edition of the Guidelines Manual" when sentencing a defendant. U.S.S.G. § 1B1.11(b)(2). However, if a court applies an earlier edition of the Guidelines Manual, the court is required to "consider subsequent amendments, to the extent that such amendments are clarifying rather than substantive changes." *Id*. Therefore, § 1B1.11(b)(2) requires a sentencing court to consider retroactively applying certain amendments to guidelines contained within the Guidelines

---

[15]Those factors are:
(i) the degree to which the defendant understood the scope and structure of the criminal activity;
(ii) the degree to which the defendant participated in planning or organizing the criminal activity;
(iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
(iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
(v) the degree to which the defendant stood to benefit from the criminal activity.
U.S.S.G. § 3B1.2, App. Note 3(C).

Manual utilized when sentencing a defendant. Further, the Sixth Circuit has held that clarifying amendments to the Guidelines apply retroactively on direct appeal. *See United States v. Fawaz*, 545 F. App'x 459, 465 (6th Cir. 2013) ("This court has consistently recognized that clarifying amendments may be applied retroactively to discern the Sentencing Commission's intent regarding the application of a pre-amendment guideline.") (quoting *United States v. Geerken*, 506 F.3d 461, 465 (6th Cir. 2007)). Therefore, had Amendment 794 been effective prior to Eversole's sentencing and/or appeal, U.S.S.G. § 1B1.11 would have provided her an opportunity to raise her Amendment 794 argument to the sentencing and/or appellate courts. But since it did not become effective until November 1, 2015, after her sentencing and direct appeal, the question is whether application of Amendment 794 may nevertheless still be sought by Eversole and, if so, whether application of the Amendment has merit here.

Under 18 U.S.C. § 3582(c)(2), a defendant may move for a sentence reduction based on an amendment to the Sentencing Guidelines that clarifies a vague guideline and results in a lower Guidelines range. *Rivera v. Warden, FCI, Elkton*, 27 F. App'x 511, 515 (6th Cir. 2001). However, § 3582(c)(2) cannot be utilized to reduce a defendant's sentence based on an amendment to the Sentencing Guidelines unless the amendment is specifically listed in U.S.S.G. § 1B1.10. *See id.* Here, Amendment 794 is not enumerated in § 1B1.10 and, therefore, Eversole cannot seek application of Amendment 794 by way of a § 3582(c)(2) motion to try to reduce her sentence.

Eversole does seek application of Amendment 794 via her present Motion under § 2255. According to Sixth Circuit case law, a clarifying amendment to the Sentencing Guidelines can be applied retroactively in four possible situations: (1) the criminal case is before the District Court for original sentencing; (2) the case is pending on direct appeal from the judgment of conviction and

sentence; (3) the clarifying amendment is made retroactive by the Sentencing Commission by being listed in U.S.S.G. 1B1.10(c); or (4) a federal prisoner brings a motion for post-conviction relief under 28 U.S.C. § 2255. *Geerken*, 506 F.3d at 464-66; *United States v. DeCarlo*, 434 F.3d 447, 458-59 (6th Cir. 2006); *United States v. Borazanian*, 148 F. App'x 352, 354 (6th Cir. 2005); *Rivera*, 27 F. App'x at 514-15; *Jones v. United States*, 161 F.3d 397 (6th Cir. 1998), *opinion amended and superseded in part by* 178 F.3d 790 (6th Cir. 1999); *United States v. Williams*, 940 F.2d 176, 182 (6th Cir. 1991); *United States v. McKibben*, 2003 WL 21960505, at *2 (E.D. Tenn. Aug.11, 2003). The fourth situation, under which a clarifying amendment may be applied retroactively pursuant to a § 2255 motion, came from the Sixth Circuit's holding in *Rivera*.

In *Rivera*, petitioner filed a motion for post-conviction relief pursuant to 28 U.S.C. § 2241 seeking, among other things, a sentence reduction pursuant to the retroactive application of clarifying amendments to the Sentencing Guidelines. *Rivera*, 27 F. App'x at 512-17. The court held petitioner's arguments for a reduction of sentence were required to be brought to the sentencing court in a § 2255 motion to vacate, rather than in a habeas petition under § 2241. *Id*. In making its determination, the *Rivera* court reviewed the other methods of post-conviction relief available to petitioner, including a motion to reduce his sentence pursuant to § 3582(c)(2). Finding that petitioner was not entitled to relief under § 3582(c)(2) because the amendments were not specifically listed in U.S.S.G. § 1B1.10, the Sixth Circuit held "if an amendment clarifies a sentencing guideline, rather than substantively changes a guideline, a sentencing court can reduce the sentence by applying the amendment retroactively, even if it is not listed in U.S.S.G. 1B1.10[]. But again, in such a case the prisoner files a § 2255 motion with the sentencing court." *Id.* at 515. Thus, *Rivera* stands for the

proposition that a defendant may request retroactive application of clarifying amendments to the Sentencing Guidelines via a motion under § 2255.

The problem for Eversole, however, is that even if this Court were to assume that Amendment 794 qualifies as a clarifying amendment and, therefore, may be applied retroactively to her case by way of her § 2255 Motion, Eversole is not entitled to the relief she seeks. As stated above, under § 2255, a federal prisoner may seek habeas relief on both constitutional and non-constitutional grounds. To succeed on a § 2255 motion alleging constitutional error, a defendant "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson*, 165 F.3d at 488. To obtain relief under § 2255 for a nonconstitutional error, a defendant must establish either a fundamental defect in the criminal proceedings which inherently resulted in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process. *See Riggs,* 209 F.3d at 831; *see also Hicks,* 122 F. App'x at 256; *McNeal,* 17 F. App'x at 260-61. Further, according to the Sixth Circuit, an error in the application of the Sentencing Guidelines does not warrant collateral relief under § 2255 "absent a complete miscarriage of justice." *Jones,* 178 F.3d at 796; *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). Here, in conjunction with Eversole's request for retroactive application of Amendment 794, she makes general allegations that her Fifth Amendment rights have been violated. It is unclear whether Eversole is attempting to seek relief on constitutional grounds or on nonconstitutional grounds. But in either event, Eversole's claims fall short of exhibiting circumstances warranting relief under § 2255.

First, Eversole made no substantive argument in her § 2255 Reply brief about the application of Amendment 794. Second, a review of her PSR and the sentencing transcript reveals a minor role

reduction under U.S.S.G § 3B1.2 was not raised in the PSR nor did Eversole raise it in objection to the PSR, during the sentencing hearing, or on direct appeal.[16]  Eversole's only objection to the PSR pertained to the quantity of drugs attributed to her, which objection District Judge Reeves took up and overruled at the sentencing hearing, and then accepted the PSR.  It is disingenuous for Eversole to now assert that the Court should examine how the mitigating role guideline, as amended by Amendment 794, is applied to her when she never requested application of a mitigating role reduction to begin with.  Eversole's failure to raise this inhibits her ability to show that a complete miscarriage of justice would result if Amendment 794 were not retroactively applied to her sentence. *C.f. Burke v. United States*, 152 F.3d 1329, 1332 (11th Cir. 1998) (holding that the decision not to retroactively apply a clarifying amendment to a sentencing guideline that enhanced § 2255 movant's sentence was not a miscarriage of justice where movant failed to raise the impropriety of the application of the pre-amendment guideline enhancement at sentencing or on direct appeal).

Moreover, even if a pre-amendment minor role reduction had been raised at sentencing and on direct appeal, the Sixth Circuit has consistently been applying Amendment 794 according to the approach adopted by the Sentencing Commission through Amendment 794.  That is, like the Seventh and Ninth Circuits, the Sixth Circuit's "average participant" determination includes only the persons who participated in the criminal activity committed in the defendant's particular case.  As such, the Sixth Circuit evaluates a defendant's relative culpability by reference to his or her co-participants.

---

[16]Chapter 3 adjustments were, though, discussed at sentencing, but not the minor role reduction specifically.  Instead, the Court pointed out at sentencing that Eversole's co-defendant, Shane Begley, raised at his sentencing the potential of sentencing disparity vis-a-vis his co-Defendant, Eversole, and whether she would be subject to a leadership enhancement under Chapter 3 as he had been. (R. 268 at 29-30).  The PSR did not include any recommended Chapter 3 adjustments and the Court accepted the PSR, ultimately concluding after hearing from counsel that not including a leadership enhancement for Eversole would not result in unwarranted sentencing disparity.  (*Id*.).

*See United States v. Bivens*, 129 F. App'x 159, 166 (6th Cir. 2005) ("[W]hether or not a defendant is a 'minor participant' in a conspiracy depends upon factors such as her involvement relative to the other participants, her knowledge of the scope of the activity, her understanding of the nature of the jointly-undertaken offense, and her culpability with respect to the conduct that forms the basis of her particular offense level."); *United States v. Miller*, 56 F.3d 719, 720 (6th Cir. 1995) ("Although defendant may be less culpable than some of his coconspirators, this does not require a finding that he was substantially less culpable than the others."); *United States v. Smith*, 918 F.2d 664, 669 (6th Cir. 1990) (A reduction for being a minor participant was not appropriate in absence of finding that defendant was "substantially less culpable than the average participant" in "this conspiracy."). As a result, the clarification provided by Amendment 794 did not materially modify the Sixth Circuit's approach to evaluating whether a defendant is entitled to a minor role reduction under U.S.S.G. § 3B1.2.

Here, according to the PSR, Eversole was buying at least two, sometimes up to three, ounces of methamphetamine from Begley about every four days, approximately thirty-five separate occasions, until her arrest. (R. 357, at 7). She would pay Begley for the drugs in advance and, after she received them, would distribute a portion for profit and keep a portion for her own personal use. (*Id.*). The frequency at which Eversole was receiving drugs during the five-month period demonstrates her extensive involvement in the conspiracy. Eversole's paying Begley for the drugs in advance shows her level of understanding of the structure of the conspiracy. The fact that Eversole was selling the drugs to others for profit indicates that she received a monetary benefit from her participation in the conspiracy. Although Defendant was not the main supplier in the conspiracy, she was a large scale distributor of the methamphetamine. A search of Eversole's home shortly after

her arrest yielded several packets of methamphetamine, $1,664.00 in cash, three cell phones, and four drug ledgers. (*Id.*). Applying U.S.S.G § 3B1.2(b) as amended by Amendment 794 to these facts, Eversole was not less culpable than most other participants in this conspiracy and, therefore, she does not qualify as a minor participant. As Amendment 794 does not provide any new relief to Eversole, § 2255 relief is not warranted in this case, even had Eversole properly sought a minor role reduction in the first place.

### 3.    Ineffective Assistance of Counsel Claim

Eversole claims in her Reply that she received ineffective assistance of counsel when her counsel, at sentencing, failed to move for suppression of or object to evidence used to calculate the amount of drugs attributable to her. Specifically, Eversole claims that counsel was ineffective for allowing the sentencing court to consider her statement as to the amount of drugs she was receiving during the conspiracy because she was "incapacitated" when she made it. This claim is without merit because it is not supported by the facts in the record nor is it supported by the law.

To successfully assert an ineffective assistance of counsel claim, a defendant must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir.2006)(noting that a defendant must prove ineffective assistance of counsel by a preponderance of the evidence). In order to prove deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A defendant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id*. at 688. Judicial scrutiny of counsel's performance,

however, is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. Notably, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*.

Deficient performance is considered constitutionally prejudicial only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. In order to prove prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before the judge or jury." *Id*. at 695. Courts may approach the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry. *Id*. at 697.

Here, counsel for Defendant made an oral objection to the quantity of methamphetamine that was attributed to Eversole at the beginning of the sentencing hearing. The basis for counsel's objection was that Eversole was under the influence of methamphetamine at the time she made her statement to law enforcement that she was receiving approximately two ounces of the drug per week and that Eversole had since informed him that amount was actually double the amount she was receiving. As such, counsel did, in fact, make the objection that Eversole claims he was ineffective for failing to make. The Court found counsel's argument unpersuasive and overruled the objection. Counsel was not ineffective for raising an objection that was rejected by the Court.

Further, Eversole cannot demonstrate that her counsel's alleged failure to move to suppress the evidence used to calculate the amount of drugs attributable to her resulted in prejudice. As stated above, "[t]o successfully challenge hearsay evidence relied upon by the sentencing judge, 'the defendant must establish that the challenged evidence is materially false or unreliable, and that such false or unreliable information actually served as the basis for the sentence.'" *Wilson*, 485 F. App'x at 112 (quoting *Silverman*, 976 F.2d at 1512). The Sixth Circuit has already found that the evidence relied upon by the sentencing court in its determination of the amount of drugs attributable to Eversole was not unreliable. Thus, the presiding District Judge properly considered it and the fact that counsel did not move for suppression of the evidence did not prejudice Eversole. As such, she is not entitled to any relief on this claim.

## IV. CERTIFICATE OF APPEALABILITY

Under Rule 11 of the Federal Rules Governing Section 2255 Proceedings, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if a defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought under § 2255). In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's

underlying constitutional claim, a certificate of appealability should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists would not debate the denial of Defendant's § 2255 Motion or conclude that the issues presented are adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it will further be herein **recommended** that a certificate of appealability be **denied** upon the District Court's entry of its final order in this matter.

## V. CONCLUSION and RECOMMENDATIONS

For the reasons stated above, **IT IS RECOMMENDED** that:

(1)    Defendant Brenda Eversole's construed Motion for leave to amend her Motion to Vacate, Set Aside, or Correct a Sentence under 28 U.S.C. § 2255 (R. 398) be **denied;**

(2)    Defendant Brenda Eversole's Motion to Vacate, Set Aside, or Correct a Sentence under 28 U.S.C. § 2255 (R. 372) be **denied;**

(3)    Defendant Brenda Eversole's Application to Proceed *In Forma Pauperis* (R. 399) be **granted;**

(4)    A Certificate of Appealability be **denied** by the District Court in conjunction with the Court's entry of its final order in this matter;

(5)    Judgment in favor of the United States be entered contemporaneously with the District Court's entry of its final order; and,

(6)    this action be stricken from the active docket of this Court.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 8(b). Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Walters,* 638 F.2d 947, 950 (6th Cir. 1981).

Dated this 3rd day of October, 2016.



**Signed By:**

**_Candace J. Smith_**

**United States Magistrate Judge**

J:\DATA\habeas petitions\2255 R&R general\13-7 Eversole R&R.final.wpd